# EXHIBIT B

## RIGHT OF REFUSAL AND PURCHASE OPTION AGREEMENT

This Right of Refusal and Purchase Option Agreement (this "Agreement") is entered into as of the ___ day of _____, 2003 by and between the Tenants Development Corporation, a Massachusetts non-profit corporation duly organized and existing in accordance with G.L. c. 180, with an address at 400 Massachusetts Avenue, Boston, Massachusetts 02116 ("Sponsor") and Tenants' Development II, Limited Partnership, a Massachusetts limited partnership with an address at 400 Massachusetts Avenue, Boston, Massachusetts 02116 ("Owner"). This Right of Refusal and Purchase Option is being granted with respect to the property shown on Exhibit A attached hereto all located in Boston, Massachusetts (the "Property").

By virtue of the subsidies and development assistance provided by and through Sponsor, Owner has been able to acquire and rehabilitate affordable housing on the Property at a favorable total cost of development. In consideration of such subsidies, and so that Sponsor may continue to fulfill its charitable purpose of providing housing for persons of low and moderate income, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sponsor and Owner agree as follows:

1.    Notice of Negotiations. During the term hereof, the Owner agrees to give notice promptly to the Sponsor if the Owner commences discussions with any third party regarding the sale of the Property.

2.    Grant of Right.

(a)    Owner grants to Sponsor a continuing right of refusal (the "Right of Refusal") to purchase the Property in the event Owner proposes to sell, transfer, assign, or ground lease all or substantially all Owner's interest therein. Notwithstanding anything to the contrary contained herein, the granting by the Owner of a mortgage, security interest, deed restriction, regulatory agreement, easement or other lien or encumbrance shall not constitute the disposition of an interest in the Property for purposes of this Agreement. In the event of any proposed sale to a bona fide third party purchaser (which term shall hereafter include any transfers or ground leases as aforesaid), Owner shall deliver to Sponsor written notice of the proposed sale (a "Disposition Notice"), which notice shall state the name and address of the proposed purchaser, the proposed use of the Property, the sales price, the seller financing offered, if any, and all other material terms of the proposed sale, and, if a written contract or offer has been signed by either or both parties, a copy of the same shall be delivered with the Disposition Notice. If Sponsor desires to exercise its Right of Refusal, Sponsor shall have 30 days from its receipt of the Disposition Notice to deliver a written notice (the "Purchase Notice") to Owner stating that it intends to exercise its Right of Refusal hereunder.

(b)    Notwithstanding the terms and conditions stated in the Disposition Notice, the following terms and conditions shall apply to any purchase by Sponsor or its nominee:

(i)     the date for delivery of the deed shall be specified in the Purchase Notice and shall be not more than 120 days after Sponsor's receipt of the Disposition Notice; and

(ii)    the purchase price shall be the lesser of:

(x)     the price stated in the Disposition Notice, or

(y)     the sum of the principal amount of outstanding indebtedness secured by the Property (other than indebtedness incurred within the 5-year period ending on the date of any sale to the Sponsor) and all federal, state and local taxes attributable to such sale.

The greater of the price specified in clauses (A) and (B) shall be referred to as the "Alternative Price".  If the consideration payable for the Property by the Sponsor is the consideration stated in the Disposition Notice, and such consideration is in whole or in part property rather than cash, the Sponsor may elect to accept the Owner's fair and reasonable estimate of the value of such property expressed in dollars, or the Sponsor may elect to pay in cash as consideration an amount equal to the value of such property as determined by a fair and reasonable appraisal.  To the extent that consent can be obtained from the then holder(s) of any of the mortgage indebtedness with respect to the Property, the Sponsor may pay all or a portion of the purchase price by assuming the existing indebtedness of the Owner.  The Owner agrees, upon request of the Sponsor, to use its best efforts to obtain such consent of holder(s) of any indebtedness.

(iii)   the Purchase Notice shall state whether the purchase price shall be the consideration specified in the Disposition Notice or the Alternative Price.  If the purchase price stated in the Purchase Notice is the Alternative Price, as a condition precedent to the exercise of the Right of Refusal, the Sponsor shall certify that it is an organization exempt from income tax under Sections 501(c)(3) or (4) of the Internal Revenue Code of 1986, as amended ("Code"), which has been determined by the state housing credit agency not to be affiliated with, or controlled by, a for-profit organization, and which has as one of its exempt purposes the fostering of low-income housing.

3.      Grant of Option.

(a)     The Owner hereby grants to the Sponsor an option (the "Option") to purchase the Property following the close of the Compliance Period as defined under Section 42(i)(1) of the Code, on the terms and conditions set forth in this Agreement and subject to the conditions precedent to the exercise of the Option specified herein.

(b)     The purchase price for the Property pursuant to the Option (the "Option Price") shall be the greater of the following amounts:

(i)     The amount set forth in Paragraph 2(b)(ii)(y) hereof; and

-2-

(ii)     The fair market value of the Property, appraised as low-income housing to the extent continuation of such use is required under the Regulatory Agreement or the Project Documents, by Appraisal (as defined in the Partnership Agreement (as hereinafter defined)).

(c)     If Sponsor elects to exercise the Option, it shall give Owner written notice (the "Option Notice") and shall specify a date for delivery of the deed by Owner of not less than one hundred twenty (120) days after Owner's receipt of the Option Notice.  To the extent that consent can be obtained from the holder(s) of any of the mortgage indebtedness with respect to the Property, the Sponsor may pay all or a portion of the Option Price by assuming the existing indebtedness of Owner.  The Owner agrees upon request of the Sponsor to use its best efforts to obtain the consent of such holders.

4.     Terms of Sale.  The following provisions shall apply to any sale of the Property pursuant to the Right of Refusal or Option granted hereunder:

(i)     the place for the delivery of the deed or other transfer documents shall be the Suffolk County Registry of Deeds ("Registry of Deeds") or such other location as is mutually acceptable to the Sponsor and the Owner.

(ii)     in any sale pursuant to (A) the Option or (B) the Right of Refusal if the sale is for the Alternative Price, the Property shall be conveyed in "as is" condition, with all defects, and the Owner shall have no obligation to make any repairs or improvements in connection with such sale.

(iii)     except as otherwise specified in this Section 2(b), the terms and conditions applicable to a purchase by the Sponsor or its nominee shall be as specified in the Disposition Notice.

(iv)     Upon receipt of a Purchase Notice from Sponsor exercising the Option or the Right of Refusal, the Owner shall promptly provide to the Sponsor an abstract of title or registered property abstract to the Property, certified to a current date to include, without limitation, proper searches covering bankruptcies, judgments, and state and federal liens.  At the closing, the Owner shall deliver to the Sponsor a good and sufficient quitclaim deed conveying good and clear record and marketable title to the Property, subject only to those liens and encumbrances set forth on the title insurance policy obtained by the Owner upon its acquisition of the Property and subject further to liens in favor of such lenders whose debt is to be assumed pursuant to Section 2(b)(ii) or Section 3(c) above and to such other encumbrances which do not materially interfere with the use of the Property as affordable residential housing.  In the event that such title cannot be delivered at closing, there shall be a 30-day extension, during which period the Owner shall use reasonable efforts to clear title.  At the closing, the parties shall make equitable adjustments for items as are typically adjusted in connection with the transfer of multi-family housing such as the Property.

(vi)     Exercise of the Option or the Right of Refusal by the Sponsor shall operate to terminate and extinguish any purchase agreement between the Owner and any

other party or parties thereto, and such other party or parties shall thereupon have no right or interest whatsoever in the Property or any part thereof or in the agreement between the Owner and the Sponsor formed by the exercise of the Option or Right of Refusal.

(vii)    If in the case of the Right of Refusal, the Sponsor does not deliver a Purchase Notice to Owner within the above-described 30 day period, or Sponsor fails to perform its obligations and conclude the transaction within 120 days from the Disposition Notice, Owner may thereupon proceed to sell the Property to the proposed purchaser at any time within 180 days from the date of the Disposition Notice upon the terms and conditions set forth in the Disposition Notice and may record a certificate executed under pains and penalties of perjury in the Registry of Deeds evidencing its compliance with its obligations hereunder, which certificate shall be deemed conclusive in favor of bona fide third party purchasers for value.  If Owner does not complete the sale of the Property within this 180-day period, Sponsor's Right of Refusal shall once again apply.  If the Property is disposed of to a different party or for different consideration or on any different terms from those stated in the Disposition Notice given by the Owner, then any such disposition by the Owner shall be null and void and the Property shall continue subject to the Right of Refusal.

(viii)    In the event that the Owner fails to offer the Property to the Sponsor as set forth above, whoever may then hold title shall convey the Property forthwith to the Sponsor, upon demand, for the same consideration that the Sponsor would have had to pay had the offer been properly made.  Such demand of the Sponsor upon the then title holder shall be made within sixty (60) days after receipt by the Sponsor of actual notice that a transfer of the Property has been completed.  Constructive notice by recording or otherwise shall not constitute such actual notice.

5.    <u>Assignment</u>.  Sponsor may assign or transfer its rights hereunder, either in general or in any specific instance, to a qualified nonprofit organization (as defined in Section 42(h)(5)(c) of the Code).  Any general assignment shall only be effective if the name and record address for notice of the assignee are duly recorded in the Registry of Deeds.

6.    <u>Subordination</u>.  This Agreement is and shall remain automatically subject and subordinate to any bona fide mortgage to (or assigned to) an institutional or governmental lender with respect to the Property and, in the event of a foreclosure of any such mortgage, or of the giving of a deed in lieu of foreclosure to any such mortgagee, this Agreement shall become void and shall be of no further force or effect.

7.    <u>Notice</u>

(a)    Any notices, consents, approvals, submissions or demands given under this Agreement (herein called "Notice" or "Notices") shall be in writing.  Unless otherwise required by law or governmental regulation, notices shall be deemed given if sent by registered or certified mail, return receipt requested, postage prepaid (1) to Sponsor at the address of Sponsor set forth above or such other address as Sponsor may designate by recording a notice thereof in the Registry of Deeds or (2) to Owner at the address set forth above with a copy to Fleet National Bank, One Federal Street, Boston,

-4-

Massachusetts 02110, or such other addresses as Owner may designate by recording a notice thereof in the Registry of Deeds. Addresses for the receipt of notice may not be changed except by Notice given as set forth above.

(b)    If this Agreement provides for a designated period after a Notice within which to perform an act, such period shall commence on the date of receipt of the Notice.

(c)    If this Agreement requires the exercise of a right by Notice on or before a certain date or within a designated period, such right shall be deemed exercised on the date of mailing of the Notice pursuant to which such right is exercised.

8.    <u>Miscellaneous</u>

(a)    Owner agrees to insert reference to this Agreement in any deed, ground lease, or other instrument for conveyance transfer of the Property, provided, however, that the enforceability of this Agreement shall not be affected by a failure to insert a reference to this Agreement in any such deed, ground lease or other instrument.

(b)    In no event shall the Option or the Right of Refusal hereunder or a sale after a purchase pursuant to such Option or Right be exercised so as to restrict ownership, use or occupancy of Property because of race, creed, color, sex, religion, or national origin or any other basis prohibited by law.

(c)    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and may not be amended other than by an agreement in writing signed by an authorized representative of the party to be charged therewith and recorded with the Registry of Deeds.

(d)    If any of the provisions of this Agreement, or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement and its application to other persons or circumstances shall not be affected thereby and each of the other provisions of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(e)    The term of this Agreement shall be thirty years commencing on the date first written above unless sooner terminated pursuant to the provisions hereof, and provided that the Option granted hereunder shall terminate upon disposition of the Property if the requirements imposed by the Right of Refusal have been observed. This Agreement and the Right of Refusal and Option herein granted are covenants running with the land and the terms and provisions hereof shall be binding upon, inure to the benefits of and be enforceable by the parties hereto and their respective successors and assigns.

(f)    Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Amended and Restated Limited Partnership Agreement of the Owner of even date herewith (the "Partnership Agreement").

GSDOCS-1241243-1

EXECUTED AND INTENDED TO TAKE EFFECT AS A SEALED INSTRUMENT AS OF THE DATE FIRST WRITTEN ABOVE.

TENANTS DEVELOPMENT CORPORATION

By: *Mary Glinkscale*
Name: *Mary Glinkscales*
Title: *President*

TENANTS' DEVELOPMENT II, LIMITED PARTNERSHIP

By:     Tenants Development II Corporation., its
        general partner

By: *Mary Glinkscale*
Name: *Mary Glinkscales*
Title: *President*

GSDOCS-1241243-1

COMMONWEALTH OF MASSACHUSETTS

_Suffolk_ , ss.                                             _June 20_ , 2003

Then personally appeared before me _Mary Clinkscales_ , _President_ of
Tenants Development II Corporation, general partner of Tenants Development Corporation
Limited Partnership and acknowledged the foregoing to be his/her free act and deed and that of
Tenants' Development II Corporation., as general partner aforesaid.

_William Drye_
Notary Public        _William H. Grojan_
My Commission Expires: _1/12/2007_

COMMONWEALTH OF MASSACHUSETTS

_Suffolk_ , ss.                                             _June 20_ , 2003

Then personally appeared before me _Mary Clinkscales_ , _President_ of
Tenants Development Corporation and acknowledged the foregoing to be his/her free act and
deed and that of said corporation.

_William Drye_
Notary Public        _William H. Grojan_
My Commission Expires: _1/12/2007_

GSDOCS-1241243-1

EXHIBIT A

Property Description

Parcel RD-38    545 Massachusetts Avenue

Lot numbered 56 on a plan entitled "A Plan of City Land to be sold October 30, 1850" recorded with Suffolk Deeds at the end of Book 615, bounded:

| | |
|---|---|
| NORTHEASTERLY | by Massachusetts Avenue (formerly that part of Chester Street which bounded on Chester Square), 25 ft.; |
| NORTHEASTERLY | by Lot No. 58 on said plan, 100 ft.; |
| SOUTHWESTERLY | by Northampton Street, 25 ft.; and |
| SOUTHEASTERLY | by Lot No. 54 on said plan, 100 ft.; |

Containing 2500 square feet of land.

Parcel RD-38    547 Massachusetts Avenue

Lot numbered 54 on a plan recorded with said Suffolk Deeds at the end of Book 615, bounded:

| | |
|---|---|
| NORTHWESTERLY | by Lot No. 56 on said plan, 100 ft.; |
| NORTHEASTERLY | by Massachusetts Avenue, formerly Chester Square, 25 ft.; |
| SOUTHEASTERLY | by Lot No. 52 on said plan, 100 ft.; |
| SOUTHWESTERLY | by Northampton Street, 25 ft.; |

Containing 2500 square feet of land.

Parcel RD-41    23 Wellington Street

A certain parcel of land with the buildings thereon now known as and numbered 23 Wellington Street, situated in Boston, Suffolk County, being all of Lots 7 and 6 and the larger part of Lot 5 on a plan by Alexander Wadsworth dated December 8, 1879, and recorded with Suffolk Deeds Book 1578, Page 275 and more fully bounded and described as follows:

BEGINNING at a point in the Northeasterly side of Wellington Street, 316 ft.  Northwest from Columbus Avenue;

thence running Northwest by Wellington, 58 ft. to land now or formerly of Henrietta K. White and now or formerly of Francis L. Willard;

thence turning and running Northeasterly by said land now or formerly of White and Willard, 104 ft. to the center of a passageway 10 ft. wide;

thence turning and running Southeasterly by the center line of said passageway 58 ft. to land now or formerly of A.A. Marcus and now or formerly of the Museum of Fine Arts;

thence turning and running Southwesterly by said land now or formerly of Marcus and the Museum of Fine Arts, 104 ft. to the POINT OF BEGINNING.

Containing 5,742 sq. ft., more or less.

<u>Parcel RD-42</u>    115 West Newton Street

      Parcel of land in Boston bounded:

      BEGINNING at south corner of mortgaged premises at point in northeast line of West Newton Street 90 ft. northwest from north corner of Tremont Street and West Newton Street;
      thence running northwest on said West Newton Street 22 ft.;
      thence northeast by line parallel with Tremont Street, 72 ft.;
      thence southeast by passageway 10 ft. wide, 22 ft.;
      thence southwest by line parallel with Tremont Street and bounded by passageway 10 ft. wide, 72 ft. to POINT OF BEGINNING;

      containing 1584 sq. ft.

<u>Parcel RD-44</u>    96 West Springfield Street

      All that lot of land with building thereon, numbered 96 West Springfield Street and shown as Lot 6 on plan dated January 12, 1858 in Book 732 Page 51 bounded:

      Northeast by West Springfield Street 18 ft. 11 in.;
      Northwest by Lot 5 on plan, being land now or late of Watson, 64 ft.;
      Southwest by passageway to Shawmut Avenue 18 ft. 11 in.;
      Southeast by Lot 7 on plan, being land now or late of Pierce, 64 ft.;
      Northwest and Southeast lines run through middle of brick partition walls.

<u>Parcel RD-47</u>    5 Braddock Park

      A certain parcel of land with the buildings thereon now known as and numbered 5 Braddock Park, situated in Boston, Suffolk County, Massachusetts, being the greater part of Lot 3 on a plan by Fuller & Whitney, Surveyors, dated October 4, 1875, recorded with Suffolk Deeds, Book 1290, Page 248, bounded as follows:

SOUTHWESTERLY          by Braddock Park, formerly Berwick Park, 33 ft.;
NORTHWESTERLY          by a passageway 10 feet wide, now Public Alley #542, 44.75 ft.;
NORTHEASTERLY          by land of owners unknown, 33 ft.;
SOUTHEASTERLY          by Lots 1 and 2 on said plan, 44.75 ft.;

      Containing 1444 square feet of land.

<u>Parcel RD-48</u>    506 Columbus Avenue

      Certain parcel of land with buildings thereon on southeast side of Columbus Avenue bounded:

BEGINNING at a point on Columbus Avenue 111 ft. southwest from southwest corner of Columbus Avenue and Rutland Square;

thence running southwest by said Columbus Avenue 24 ft. 7 ½ in.;

thence turning and running southeast by land now or late of Ordway through center of brick partition wall 80 ft. 11 in.;

thence turning and running northeast 24 ft. 7 ½ in.;

thence turning and running northwest by land now or formerly of Rand through center of brick partition wall 80 ft. 11 in. to POINT OF BEGINNING on Columbus Avenue.


Parcel RD-49     24 East Springfield Street

A certain lot of land with the buildings thereon situated on East Springfield Street in said Boston, bounded and described as follows:

BEGINNING at the most westerly corner of said premises, being a point in the Northeasterly line of Springfield Street 400.45 ft. from the corner of Springfield Street and Harrison Avenue;

Thence Northwesterly at right angles with Springfield Street by a line running through the center of the brick partition wall 70 ft.;

NORTHEASTERLY bounded by a passageway 10 feet wide parallel with Springfield Street, 21 ft.;

SOUTHWESTERLY at right angles with said passageway by a line running through the center of the brick partition wall 70 ft.;

SOUTHEASTERLY by Springfield Street 21 ft. to the POINT OF BEGINNING.

Containing 1470 square feet more or less and being Lot 4 on a plan recorded with plans of City lands sold Liber 2, Folio 94, in the office of the Superintendent of Public Lands in said Boston.


Parcel RD-50     403 Massachusetts Avenue

A certain parcel of land with the buildings thereon now known as and numbered 403 Massachusetts Avenue (formerly West Chester Park) in Boston, being Lot 1 on the Plan of Lots on West Chester Park by T. William Harris dated October 2, 1884, described as follows:  running

| | |
|---|---|
| SOUTHWESTERLY | through the middle of said partition wall and by said land now or formerly of Yeaton, 95 ft. to a passageway 10 feet wide; thence turning and running |
| NORTHWESTERLY | by said passageway, 18.78 ft. to Lot 2 on said plan; thence turning and running |
| NORTHEASTERLY | by Lot 2, 95 ft. to Massachusetts Avenue; thence turning and running |
| SOUTHEASTERLY | by Massachusetts Avenue, 19 ft. to the point of beginning. |

Containing 1794.55 square feet.


Parcel RD-51     407 Massachusetts Avenue

Land in Boston, dwelling house and land bounded:

A-3

Northeast by Massachusetts Avenue (formerly West Chester Park) extended 20 ft.;

Southeast by house and land formerly mortgaged by John W. Shapleigh, John Goldsburn, executor, and trustee by deed of mortgage recorded in Book 970 Page 124, by line through center of brick partition wall 95 ft.;

Southwest by passageway 10 ft. wide extending to Columbus Avenue, 20 ft.;

Northwest by land formerly mortgaged by said Shapleigh, J. Mason Everett by deed of mortgage in Book 970 Page 48 by line through center of brick partition wall 95 ft.

Parcel RD-52    419 Massachusetts Avenue

Parcel of land with buildings thereon in Boston bounded:

Northeast by Massachusetts Avenue (formerly West Chester Park) 22 ft.;

Southeast by land now or formerly of Calvin Swallow by line through middle of partition wall, 22 feet northwest from land conveyed to Hiram P. Bean, by deed in Book 933 Page 54, 95 ft.;

Southwest by 10 foot passageway 22 ft.;

Northwest by land now or late of E.S. Johnson by line through middle of partition wall 95 ft.;

Said premises are numbered 419 Massachusetts Avenue.

Parcel RD-53    423 Massachusetts Avenue

The land in Boston known as 423 Massachusetts Avenue, situated on the Southwesterly side of Massachusetts Avenue, formerly called West Chester Park, a short distance northwesterly from Columbus Avenue in said Boston, being known as an unnumbered lot on a certain plan recorded with Suffolk Deeds, Book 933 Page 55, and said parcel is bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY | by Massachusetts Avenue, 22 ft.; |
| SOUTHEASTERLY | by another unnumbered lot shown on said plan by a line supposed to run through the middle of the brick petition wall, 105 ft.; |
| SOUTHWESTERLY | by land marked Nathan Matthews on said plan, 4.44 ft.; |
| NORTHWESTERLY | by the same, 5 ft.; |
| SOUTHWESTERLY | by the same, 17.56 ft.; and |
| NORTHWESTERLY | by land marked Calvin Swallow on said plan, by a line supposed to run through the middle of the brick partition wall, 100 ft. |

Containing 2722 1/5 square feet of land, more or less.

<u>Parcel RD-54</u>   *569 Massachusetts Avenue*

Land with buildings thereon in Boston, numbered 569 Massachusetts Avenue, bounded:

on northwest by Lot 34 on plan entitled "Plan of City Lands to be sold on October 30, 1850," there measuring 94 ft.;
on southeast by Lot 30 on plan 94 ft.;
Northeast by Massachusetts Avenue 25 ft.;
Southwest by passageway 6 feet wide there measuring 25 ft.

<u>Parcel RD-54</u>   *571 Massachusetts Avenue*

Lot 30 Massachusetts Avenue on plan at end of Book 615, bounded:

northwest by Lot 32 on plan by line running through center of partition wall 94 ft.;
northeast by Massachusetts Avenue, formerly Chester Square, 25 ft.;
southeast by Lot 28 on plan by line running through center of partition wall 94 ft.;
southwest by 6 ft. passageway 25 ft.;

containing 2350 sq. ft.

<u>Parcel RD-54</u>   *573 Massachusetts Avenue*

Certain parcel of land with buildings thereon in Boston, County of Suffolk, Commonwealth of Massachusetts, being Lot 28 on plan at end of Book 615, bounded:
on northwest by Lot 50 on said plan 94 ft.;
on northeast by Massachusetts Avenue 25 ft.;
on southeast by Lot 26 on plan 94 ft.;
on southwest by 6 foot passageway 25 ft.

<u>Parcel RD-55</u>   *553 Massachusetts Avenue*

Certain parcel of land with building thereon being Lot 48 on "A Plan of City Land to be sold October 30, 1850" bounded:

on northwest by Lot 50, 100 ft. by line running through center of brick partition wall;
on northeast by Massachusetts Avenue (formerly that part of Chester Street that bounds Chester Square) 25 ft.;
on southeast by Lot 46 on plan 100 ft. by line running through center of brick partition;
southwest by Northampton Street 25 ft.;

containing 2500 sq. ft.

<u>Parcel RD-56</u>   *560 Massachusetts Avenue*

Lot 37 on plan at end of Book 615 bounded:

West by Massachusetts Avenue on curved line 30 ft. 2 ½ in.;
Northwest by Lot 39 on plan by line supposed to be in part through middle of brick partition wall, 113 ft. 9 3/8 in.;
Northeast by West Springfield Street 25 ft.;
Southeast by Lot 99 and Lot 35 on plan by line supposed to be in part through middle of brick partition wall 130 ft. 7 in.;

Containing 3036 sq. ft.


Parcel RD-58    663 Massachusetts Avenue

A certain parcel of land situate in said Boston, bounded and described as follows:

| | |
|---|---|
| Northeasterly | by the southwesterly line of Massachusetts Avenue, 21.84 ft.; |
| Southeasterly | 6 ft.; |
| Northeasterly | 0.39 ft., and |
| Southeasterly | 36.10 ft., all by land now or formerly of James J. Crosby et al; |
| Southwesterly | by land now or formerly of said Crosby et al and by Lot 2 as shown on plan hereinafter mentioned, 23.34 ft.; and |
| Northwesterly | 36.10 ft.; |
| Northeasterly | 0.68 ft.; and |
| Northwesterly | 6 ft., all by Lot 2 as shown on said plan. |

Said land is shown as Lot One (1) on a subdivision plan drawn by Edmund C. Corsano, A.J. Ialuna, Surveyors, dated May 5, 1962, as approved by the Court, filed in the Land Registration Office as plan No. 4868-B, a copy of a portion of which is filed with certificate of title No. 69646.


Parcel RD-59    29 Rutland Street

Certain parcel of land on northeast side of Rutland Street, Boston, bounded:

Southwest by Rutland Street 16 ½ ft.;
Northwest by land now or formerly of Tousaro by line running through center of brick partition wall 45 ft.;
Northeast by land of Talbot and land now or late of Root 16 ½ ft.; and
Southeast by land now or late of Hunt by line running through center of brick partition wall 45 ft. to POINT OF BEGINNING.


Parcel RD-69    57 Worcester Street

Certain parcel of land with buildings thereon, numbered 57 Worcester Street bounded:

BEGINNING at point on northeast side of Worcester Street 165 ft. 8 in. northwest from 20 foot street or way called Newland Street;
and from such point running northwest, bounded southwest by said Worcester Street 20 ft. 4 in.;

thence turning and running northeast parallel with Newland Street by line running through center of brick partition wall 91 ft. to 10 foot passageway;

thence turning and running southeast on said 10 foot passageway 20 ft. 4 in.;

thence running southwest by line through center of brick partition wall 91 ft. to POINT OF BEGINNING.

Being Lot 9 on plan in Book 711 Page 201.


Parcel RD-72    405 Massachusetts Avenue

Land in Boston with the buildings thereon, bounded and described as follows:

Northeasterly by Massachusetts Avenue, 20 ft.;

Southeasterly by land now or late of Shapleigh, by a line through the middle of a brick partition wall, 95 ft.;

Southwesterly by a 10 foot passageway to Columbus Avenue, 20 ft.;

Northwesterly by land now or late of Swallow by a line through the middle of a brick partition wall, 95 ft.


Parcel RD-73    421 Massachusetts Avenue

Certain lot of land with buildings thereon in Boston, bounded:

Northeast by Massachusetts Avenue (formerly West Chester Park) 22 ft.;

Southeast by land conveyed by Calvin Swallow to Hiram P. Bean in Book 933 Page 54 by line running through middle of brick partition wall, 95 ft.;

Southwest by passageway 10 ft. wide extending to Columbus Avenue, 22 ft.;

Northwest by land now or late of J.F. Cane by line passing through middle of brick partition wall 95 ft.;

Conveyed with full and encumbered right of way and drainage in passageway.


Parcel RD-74    425 Massachusetts Avenue

Certain parcel containing 2310 sq. ft. with buildings thereon on southwest side of Massachusetts Avenue, a short distance northwest from Columbus Avenue, in Boston, bounded:

Northeast by Massachusetts Avenue 22 ft.;

Southeast by land now or late of Ahl, by line in part through middle of brick party wall 105 ft.;

Southwest by land formerly of Nathan Matthews 22 ft.;

Northwest by land now or late of Perkins by line in part through middle of brick party wall 105 ft.;

Together with rights of way and drainage in and over 10 foot passageway running northwest from Columbus Avenue, across rear of above described parcel.

Parcel RD-75    401 Massachusetts Avenue

Being Lot 2 on Plan of Lots of West Chester Park by T. William Harris dated October 2, 1884.
Bounded:

BEGINNING on Massachusetts Avenue at Lot 1 on said plan;
thence running southwest on said Lot 1, 95 ft. to passageway 10 feet wide;
thence northwest on said passageway 19 ft. to Lot 3 on plan;
thence northeast on Lot 3, 95 ft. to Massachusetts Avenue;
thence southeast on Massachusetts Avenue to POINT OF BEGINNING;
containing 1805 sq. ft. Southeast and northwest boundaries are through brick partition walls.

Together with usual rights in passageway in rear.


Parcel RR-69    30 Greenwich Park

Land situated on Greenwich park bounded:

BEGINNING at point on southwest side of Greenwich Park 322 ft. northwest from Columbus Avenue;
and running northwest on Greenwich Street 21 ft.;
thence southwest by line through middle of brick partition wall 105 ft;
thence southeast 21 ft.;
thence northeast by line through middle of brick partition wall 105 ft. to the POINT OF BEGINNING.


Parcel RR-83    612 Massachusetts Avenue

All that parcel of land with buildings thereon in Boston, being Lot 11 on plan of City lands at end of Book 615, bounded:

southwest on Massachusetts Avenue, formerly Chester Square, 26 ft.;
northwest on Lot 13 on said plan 116 ft.;
northeast on land now or formerly of A.J. Allen 26 ft.;
southwest by Lot 9 on said plan 116 ft.


Parcel RR-84    623 Massachusetts Avenue

Lot 4 on plan at end of Book 615, bounded:

northwest by Lot 6 on plan 70 ft.;
northeast by Massachusetts Avenue (formerly called Chester Square) 24 ft.;
southeast by Lot 2 on plan 70 ft.;
southwest by passageway 20 feet wide, 24 ft.;

containing 1680 sq. ft.

A-8

<u>Parcel RR-85</u>    627 Massachusetts Avenue

Certain parcel containing 1680 sq. ft. with buildings thereon on southwest side of Massachusetts Avenue a short distance northwest of Washington Street, Boston, being Lot 2 on plan at end of Book 615, bounded:

northeast by Massachusetts Avenue 24 ft.;
southeast by Lots 113, 114, 115, 70 ft.;
southwest by Lot 115 on plan 20 ft. and by way called Chester Place 4 ft.;
northwest by Lot 4 on plan 70 ft. with all rights, easements, privileges and appurtenances to premises belonging; together with right in passageway.

<u>Parcel RR-86</u>    127 West Concord Street

Land in Boston bounded:

Southwest by said Concord Street 20 ft.;
Northwest by straight line passing through middle of partition wall 90 ft. 6 in.;
Northeast by passageway (known as Newland Place) 21 ft. 1 ¾ in.;
Southeast by land now or formerly of Eliza A. Coburn 34 ft. 6 in.;
Southwest by same 6 in.;
and Southeast again by same 56 ft.;

being part of same premises conveyed to Caroline A. Benton by Mortimer C. & Mary E. Ferris in Book 853 Page 89.

<u>Parcel RR-88</u>    213 West Newton Street

Land with buildings thereon situated in Boston, on northeast side of West Newton Street, numbered 213 on said street, bounded:

BEGINNING at point on northeast side of West Newton Street, 331 ft. northwest from Columbus Avenue;
thence running northwest on West Newton Street 20 ft.;
thence running northeast by land now or late of Sarah R. Bartlett through middle of brick partition wall separating house mortgaged from house adjoining, 110 ft.;
thence running southeast 20 ft.;
thence running southwest by land now or late of Mary W. Bridge through middle of brick partition wall separating house mortgaged from house adjoining 110 ft. to West Newton Street;

Containing 2200 sq. ft.

<u>Parcel RR-90</u>    32 Greenwich Park

Land in that part of Boston called Back Bay bounded:·

A-9

BEGINNING at point in south line of Greenwich Park, formerly Concord Street 343 ft. northwest from Columbus Avenue;

and running northwest on said Greenwich Park 20 ft.;

thence southwest 100 ft.;

thence southeast 20 ft.;

thence northeast 100 ft. to POINT OF BEGINNING.

Parcel RR-91    139 Pembroke Street

A certain parcel of land situated in Boston in the County of Suffolk and Commonwealth of Massachusetts, bounded and described as follows:

Southwesterly by Pembroke Street, 20.98 ft.;

Northwesterly by land now or formerly of Minnie A. Burlingame, the line running in part through the middle of an eight (8) inch brick wall, 80 ft.;

Northeasterly by the middle line of a Way as shown on the plan hereinafter mentioned 21.15 ft.; and

Southeasterly by land now or formerly of Delia Lydon, the line running in part through the middle of an eight (8) inch brick wall (which has been widened to 12 inches), 80 ft.

All of said boundaries are determined by the Court to be located as shown on a plan drawn by J.A. Sharkey, Surveyors, dated February 5, 1944, as modified and approved by the Court, filed in the Land Registration Office as plan No. 19080-A, a copy of a portion of which is filed with Certificate of Title No. 49250.

Parcel RR-98    692 Massachusetts Avenue

Land with buildings thereon in Boston bounded:

BEGINNING at the most west corner thereof, being a point in the northeast line of Massachusetts Avenue 546 ft. southeast from east corner of Massachusetts Avenue and Washington Street;

thence running northeast by Lot 26 on plan hereinafter mentioned 84.88 ft.;

thence southeast by passageway 10 feet wide 22.75 ft.;

thence southwest by Lot 28, 84.88 ft. to Massachusetts Avenue;

thence northwest by Massachusetts Avenue 22.75 ft. to POINT OF BEGINNING;

containing 1931 sq. ft. being Lot 27, Plan Book 2 Page 107.

Parcel RR-99        696 Massachusetts Avenue

Certain parcel of land with buildings thereon in Boston, on that part of Massachusetts Avenue formerly known as Chester Square, 696 Massachusetts Avenue being Lot 29, plan book 2, page 107,

Bounded:

BEGINNING at point in northeast line of Massachusetts Avenue 591.05 ft. southeast from east corner of Massachusetts Avenue and Washington Street;

thence running northeast by Lot 28, 84.88 ft.;

thence southeast by passageway 10 ft. wide parallel with Massachusetts Avenue, 22 ft. 9 in.;

thence running southwest by Lot 30, 84.88 ft.;

thence running northwest by Massachusetts Avenue 22 ft. 9 in. to POINT OF BEGINNING.

Containing 1931.02 sq. ft.


Parcel PB-13b          32 Worcester Street

Bounded:

Northeast by Worcester Street, 20 ft.;
Southeast by Shawmut Avenue, 45 ft.;
Southwest by land now or formerly of the City of Boston, 20 ft.;
Northwest by land formerly of Inglis by line through middle of brick partition wall 45 ft.

Containing 900 sq. ft.


Parcel SE-8          84 Worcester Street

A certain parcel of land situated in Boston, in the County of Suffolk and Commonwealth of Massachusetts, bounded and described as follows:

Northeasterly by the southwesterly line of Worcester Street, 22 ft.;
Southeasterly by land now or formerly of Lillian E. Brooks, the line running in part through the middle of an 8 in. brick wall, 100 ft.;
Southwesterly by a Passageway 10 ft. wide as shown on said plan, 22 ft.; and
Northwesterly by land now or formerly of Margaret G. Glover, the line running in part through the middle of an 8 in. brick wall, 100 ft.

All of said boundaries are determined by the Court to be located as shown upon plan numbered 19478-A, Sheet 2, filed with certificate of title No. 46458, the same being compiled from plan drawn by David S. Wexler, Civil Engineer, dated June 16, 1945, and additional data on file in the Land Registration Office all as modified and approved by the Court, and said land is shown as parcel 2 on said plan.